**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **E&B NATURAL RESOURCES MANAGEMENT CORPORATION, ET AL.,**<br><br>Plaintiffs,<br><br>vs.<br><br>**COUNTY OF ALAMEDA, ET AL.,**<br><br>Defendants**.** | CASE NO. 18-cv-05857-YGR<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 20 |

Plaintiffs E&B Natural Resources Management Corporation ("E&B"), Laurie Volm, Sharyl G. Bloom, Richard S. Bloom, James C. Roth, Dolores D. Michaelson, and Michael Karpe bring the instant action against the County of Alameda (the "County") and the Alameda County Board of Supervisors (the "Board") (together, "County Defendants") in connection with County Defendants' decision not to renew two conditional use permits ("CUPs") which County Defendants contend are predicates for E&B's continued operations at the Livermore Oil Field. Plaintiffs assert six claims for relief, only one of which is federal, namely the third claim for "Violation of Federally Protected Civil Rights (42 U.S.C. §§ 1983, *et seq*.)." (*See* Dkt. No. 1 ("Compl.") at 16.)[1] County Defendants have filed a motion to dismiss plaintiffs' complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Dkt. No. 20 ("MTD").)[2]

---

[1] The other five are for vested rights/equitable estoppel; writ of administrative mandamus, Cal. Civ. Proc. Code § 1094.5; inverse condemnation, U.S. Const. Amend. V, Cal. Const. art. I, § 19; regulatory taking, U.S. Const. Amend. V, Cal. Const. art. I, § 19; and declaratory relief, 28 U.S.C. § 2202. *See generally* Compl. While some of these claims reference the United States Constitution, plaintiffs clarify that these are in fact *state-law claims*. *See* Opposition to MTD ("Opp.") at 7, Dkt. No. 24 (arguing that the Court has original jurisdiction over the Section 1983 claims only and that supplemental jurisdiction exists over plaintiffs' "other state law claims"). With respect to plaintiffs' claim for "declaratory relief," (Compl. at 19–20), the Court notes that declaratory relief is a remedy, not a separate cause of action.

[2] The Court previously vacated the hearing on the motion pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b). *See* Dkt. No. 29.

Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court finds that until the threshold issue of whether a federal claim is adequately stated is resolved, it will not exercise supplemental jurisdiction over the state-law claims. Accordingly, the Court **GRANTS** the motion to dismiss **WITH LEAVE TO AMEND**.

### III. SUMMARY OF RELEVANT ALLEGATIONS

The Livermore Oil Field is an oil extraction and production facility that has been in operation since 1966. (Compl. ¶ 1.) The County's General Plan for this geographic area, the East County Area Plan, designates the three parcels which make up the Livermore Oil Field as "Large Parcel Agriculture." (*Id*. ¶ 18.) Under the County's Oil and Gas Ordinance, County Code § 17.06.040(H), "[d]rilling for and removal of oil, gas or other hydrocarbon substances" is permitted in areas zoned "A" for "Agricultural" use with a CUP. (*Id*. (internal quotation marks omitted).)

E&B contends that it, or its predecessors, has been pumping oil at the Livermore Oil Field since 1966. (*Id*. ¶ 21.) Specifically, E&B operates nine wells and production equipment, capable of producing 20-30 barrels of oil per day. (*Id*. ¶ 20.) These operations began in 1966 when the original operator, McCulloch Oil Corporation ("McCulloch"), submitted Notices of Intention to Drill New Wells to the California Department of Conservation, Division of Oil, Gas and Geothermal Resources ("DOGGR") in December of that year and again in April 1967. (*Id*. ¶ 21.) The original CUPs for the Livermore Oil Field were issued to McCulloch in August 1967. (*Id*. ¶ 22.) Since then, McCulloch and its successors-in-interest, including E&B, obtained renewal CUPs from County Defendants and have continuously operated the oil wells and production equipment at the Livermore Oil Field. (*Id*.)

In July and October 2017, E&B submitted two applications for renewal of CUPs, one known as the "GIG Lease CUP" and the other known as the "Nissen Lease CUP." (*Id*. ¶¶ 23, 24.) A third CUP, known as the "Schenone Lease CUP," remains valid at this time, but its operation depends upon at least one of the other two CUPs. (*Id*. ¶ 23.)

Plaintiffs allege that the Alameda County East County Board of Zoning Adjustments ("BZA") held two public hearings to consider jointly the two CUP renewal applications, one on

2

February 22, 2018 and the second on May 24, 2018. (*Id*. ¶¶ 26, 27.) The BZA heard public comment, and deliberations were held with respect to both hearings. (*Id*.) Following the second hearing, the BZA conditionally approved the CUPs for the Livermore Oil Field. (*Id*. ¶ 27.) The BZA found that: First, public need required renewal of the CUPs. Second, E&B's use of the Livermore Oil Field (i) was compatible with surrounding agricultural uses and sufficiently distant from urban uses; (ii) would not cause detriment to either the surrounding properties or the general public; (iii) was consistent with the East County Area Plan and the Zoning Ordinance; and (iv) would continue to meet the requirements of the County and DOGGR. (*Id*. ¶ 28.)

On June 1, 2018, the Center for Biological Diversity ("CBD") filed an appeal of the BZA's conditional approval of the CUPs to the Board, requesting that the Board reverse the BZA's decision and deny the CUPs. (*Id*. ¶ 29.) The appeal was based both on various allegations about the Livermore Oil Field, including E&B's alleged history of environmental violations, and more general arguments about fossil fuel extraction. (*Id*. ¶ 31.) E&B timely and comprehensively responded to each of CBD's allegations with technical and scientific evidence. (*Id*. ¶ 32.)

At a hearing on July 24, 2018, the Board heard the appeal by CBD, and after "extensive public comment and very little Board deliberation," voted to approve the appeal and deny the two CUP applications. (*Id*. ¶ 34.) Plaintiffs allege that, without any evidentiary basis, the Board determined that E&B's use was not required by public need or compatible with agricultural use due to the risk of groundwater contamination, and that E&B's use could cause serious detriment to the surrounding properties or the general public. (*Id*. ¶ 35(a)–(c).) According to plaintiffs, such findings were "arbitrary and capricious" and "contradicted by established facts, scientific evidence and actual experience." (*Id*. ¶ 36.)

Plaintiffs filed the instant action on September 24, 2018. Relevant here, plaintiffs allege as follows:

> 48. Plaintiffs are informed and believe and thereon allege that at all times herein mentioned [County] Defendants were acting under, or purporting to act under, the color of state law and were implementing their purported official policy and the County Code, and that [County] Defendants themselves are the highest-level ultimate decision-makers whose conduct resulted in the constitutional violations alleged herein.

49. Defendants have deprived Plaintiffs of Property or of property interests, in violation of federal and state law. 42 U.S.C. § 1983 protects against municipal actions that violate a property owner's constitutional rights, including actions that violate a property owner's rights to due process, equal protection of laws, and just compensation for the taking of property, under the Fifth and Fourteenth Amendments to the United States Constitution.

50. [County] Defendants have acted in an arbitrary, unjustified, and unlawful manner; deliberately flouted the law and substantially impaired important legal rights secured to Plaintiffs; effectively denied to Plaintiffs the rights guaranteed to it [sic] under the Constitution of the United States and under the laws of the United States, including but not limited to the Plaintiffs' rights to due process and equal protection of the laws, and just compensation for the taking of Property in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

51. As a direct and proximate result of [County] Defendants' conduct, Plaintiffs have been deprived of civil rights in violation of 42 U.S.C. §§ 1983, *et seq.*, and Plaintiffs have been subjected to great and irreparable injury, which may be properly remedied by injunctive relief, restraining and enjoining [County] Defendants from acting in the manner as set forth above, and Plaintiffs have sustained or will sustain damages as a result of [County] Defendants' unlawful conduct, in an amount according to proof.

52. Accordingly, Plaintiffs are entitled to relief, pursuant to 42 U.S.C. §§ 1983, *et seq.*, as well as attorneys' fees and costs to the extent permitted by law. 42 U.S.C. § 1988.

(*Id.* ¶¶ 48–52 (last emphasis supplied).)

## IV. LEGAL STANDARDS

### A. Rule 12(b)(1)

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). A defendant may raise the defense of lack of subject matter jurisdiction by motion pursuant to Federal Rule of Civil Procedure 12(b)(1). The party asserting jurisdiction always bears the burden of establishing subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

### B. Rule 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (citation omitted). The Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

## V. DISCUSSION

### A. Plaintiffs' *Monell* Claim

Because plaintiffs now clarify that the *only* federal claim asserted in their complaint is the 42 U.S.C. § 1983 ("Section 1983") claim, (Opp. at 7), the Court focuses its analysis on the sufficiency of the same. Whether the Court takes supplemental jurisdiction over the other four state-law claims is discretionary. *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("With respect to supplemental jurisdiction . . . , a federal court has subject-matter jurisdiction over specified state-law claims, which it may (or may not) choose to exercise. . . . A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary.") (internal citation omitted).

Section 1983 provides a cause of action against any person, including municipalities, counties, and subdivisions thereof, for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws[.]" 42 U.S.C. § 1983; *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978). To state a claim under Section 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Additionally, if a plaintiff is seeking to establish that a municipal entity is liable for the alleged violation, then that plaintiff must also establish that the alleged violation was attributable to the enforcement of an official municipal policy, a permanent and well-settled practice, or a decision of a municipal official with final decision-making

5

authority. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–83 (1986); *Castro v. Cty. of L.A.*, 797 F.3d 654, 670 (9th Cir. 2015), *on reh'g en banc*, 833 F.3d 1060 (9th Cir. 2016).

Specifically, in order for a municipality to be liable under *Monell*, plaintiffs must show that: "(1) they were deprived of their constitutional rights by defendants and their employees acting under color of state law; (2) that the defendants have customs or policies which 'amount[] to deliberate indifference' to their constitutional rights; and (3) that these policies are the 'moving force behind the constitutional violation[s].'" *Lee v. City of L.A.*, 250 F.3d 668, 681–82 (9th Cir. 2001) (quoting *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992)), *abrogated on other grounds by Twombly*, 550 U.S. at 555.

County Defendants argue principally that plaintiffs' Section 1983 claims fail because: (i) neither the County nor the Board is a "person" for purposes of Section 1983; (ii) the Eleventh Amendment bars suits against the County and the Board; (iii) plaintiffs' allegations regarding the constitutional violations they have suffered are insufficient; and (iv) plaintiffs have failed to allege that County Defendants had a policy of committing violations of constitutional rights. (*See* MTD at 10–12; Reply to Opp. to MTD ("Reply") at 2–8.) The Court addresses each of the four grounds in turn.

*1. County Defendants are "persons" for purposes of Section 1983.*

County Defendants' contention that they are not "persons" for purposes of Section 1983 liability is based on a fundamental misunderstanding of basic Section 1983 principles. Namely, *Monell* established that "municipalities *and other local governmental units . . .* [are] among those persons to whom § 1983 applies," but not on the basis of *respondeat superior*. *Monell*, 436 U.S. at 690, 691 (emphasis supplied); *see also Edgerly v. City & Cty. of S.F.*, 599 F.3d 946, 960 (9th Cir. 2010) ("Local government entities can be sued directly under § 1983 . . . .") (internal quotation marks omitted); *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) ("We have consistently refused to hold municipalities liable under a theory of *respondeat superior*.").

Counties are persons for purposes of Section 1983. *See Thompson v. City of L.A.*, 885 F.2d 1439, 1443 (9th Cir. 1989) ("[L]ocal governmental bodies, such as counties, are persons under

6

§ 1983 and therefore may be sued under the statute for constitutional injuries."), *overruled on other grounds by Bull v. City & Cty. of S.F.*, 595 F.3d 964 (9th Cir. 2010) (en banc); *see also Jackson v. Barnes*, 749 F.3d 755, 764 (9th Cir. 2014) ("[W]hen a California sheriff's department performs the function of conducting criminal investigations, it is a county actor subject to suit under § 1983."), *cert denied*, 135 S. Ct. 980 (2015). County Defendants' contention that the United States Supreme Court in *Monell* did not define what it meant by "other local government units" ignores the foregoing authority and focuses on pre-*Monell* jurisprudence. (*See* Reply at 4.) Section 1983 claims are *routinely* allowed to proceed against counties and county boards of supervisors.[3] Accordingly, County Defendants' efforts to dismiss plaintiffs' Section 1983 claims on the basis that they are not entities subject to liability under that statute fail.

### 2. *County Defendants do not enjoy Eleventh Amendment immunity.*

"The Eleventh amendment prohibits federal courts from hearing suits brought against an unconsenting *state*." *Brooks v. Sulphur Springs Valley Elec. Coop.*, 951 F.2d 1050, 1053 (9th Cir. 1991) (emphasis supplied). It bars suit against state agencies, as well as those where the state itself is named as a defendant. *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993); *Beentjes v. Placer Cty. Air Pollution Control Dist.*, 397 F.3d 775, 777 (9th Cir. 2005). The Eleventh Amendment also bars damages actions against state officials in their official capacity. *See Flint v. Dennison*, 488 F.3d 816, 824–25 (9th Cir. 2007); *Dow v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997). Thus, County Defendants' argument that they are immune from suit under the Eleventh Amendment fails, as they have not

---

[3] While it is true that a governmental agency that is an arm of the state is not a person for purposes of Section 1983, *see Howlett v. Rose*, 496 U.S. 356, 365 (1990), County Defendants have made no efforts to address the Ninth Circuit's five-factor test for making this determination, namely:

> [1] whether a monetary judgment would be satisfied out of state funds, [2] whether the entity performs central governmental functions, [3] whether the entity may sue or be sued, [4] whether the entity has the power to take property in its own name or only in the name of the state, and [5] the corporate status of the entity.

*Hale v. Arizona*, 993 F.2d 1387, 1399 (9th Cir. 1993) (en banc) (quoting *Mitchell v. L.A. Cmty. Coll. Dist.*, 861 F.2d 198, 201 (9th Cir. 1988)). Thus, the Court assumes no basis exists to find that County Defendants are serving as state actors.

shown that they qualify as state actors. (*See supra* at 7 n.3.)

Moreover, the Supreme Court has squarely rejected County Defendants' position. *See Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 369 (2001) ("[T]he Eleventh Amendment does not extend its immunity to units of local government."); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977) ("The bar of the Eleventh Amendment to suit in federal courts extends to States and state officials in appropriate circumstances . . . but does not extend to counties and similar municipal corporations."); *Beentjes*, 397 F.3d at 777 ("The [Supreme] Court, however, has consistently refused to construe the Amendment to afford protection to political subdivisions such as counties and municipalities, even though such entities exercise a slice of state power.") (internal quotation marks omitted). County Defendants' argument that plaintiffs' Section 1983 claims should be dismissed pursuant to the Eleventh Amendment therefore fails.

    *3.     Plaintiffs do not show that their constitutional rights were violated.*

Absent a constitutional violation, no basis exists to hold County Defendants liable under *Monell*. *See Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 957 (9th Cir. 2008) (where "there is no constitutional violation, there can be no municipal liability"); *Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994) ("While the liability of municipalities doesn't turn on the liability of individual officers, it is contingent on a violation of constitutional rights.").

Plaintiffs clarify that their Section 1983 claims against County Defendants are based on violations of their "due process and equal protection" rights. (Opp. at 16; *see also generally id*. at 14–16.) However, rather than pleading specific factual allegations amounting to violations of such rights, plaintiffs make conclusory statements about County Defendants' conduct. (*See supra* at 4 (citing Compl. ¶¶ 49, 50).) This is insufficient. Moreover, plaintiffs do nothing to illuminate any kind of constitutional claim. They do not specify whether the asserted due process violations are of a procedural or substantive nature, nor do they allege membership in a protected class. Plaintiffs' bare assertions thus leave open the question of whether County Defendants committed an underlying constitutional violation. Accordingly, the complaint does not state a viable Section 1983 claim for municipal liability. County Defendants' motion is granted on this basis.

8

### 4. *Plaintiffs do not show that County Defendants had a policy of committing violations of constitutional rights.*

Even if plaintiffs' conclusory due process and equal protection allegations were sufficient to allege constitutional violations, the complaint does not allege the existence of any policy, much less one that could have caused the vague constitutional violations that are alleged as required under *Monell*. The vague reference to County Defendants' "purported official policy" is insufficient, (Compl. ¶ 48), as is the conclusory assertion that County Defendants are "the highest-level ultimate decision-makers" to the extent County Defendants base their municipal liability theory on a decision of a municipal official with final decision-making authority. (*Id.*) Rather, plaintiffs allege constitutional violations arising from isolated events surrounding County Defendants' decision not to renew the two specific CUPs at issue in this action. *See Picray v. Sealock*, 138 F.3d 767, 772 (9th Cir. 1998) ("Proof of random acts or isolated events does not satisfy the plaintiff's burden to establish a policy or custom [under Section 1983]."); *Thompson*, 885 F.2d at 1443–44 (same). Because plaintiffs do not point to any specific policy that led to their alleged deprivations, they have also not shown the final two elements of their *Monell* claim, namely that the policy "amounts to deliberate indifference" of their rights and that it is the "moving force behind the constitutional violation[s]." *Lee*, 250 F.3d at 681–82 (internal quotation marks omitted). The complaint's Section 1983 claims against County Defendants are subject to dismissal on this additional ground.

Accordingly, County Defendants' motion to dismiss plaintiffs' Section 1983 claims pursuant to Rule 12(b)(6) is **GRANTED**.

### B. Plaintiffs' State Law Claims

As plaintiffs concede, all of their remaining claims are predicated upon California state law, namely: vested rights/equitable estoppel, writ of mandamus, inverse condemnation, and regulatory taking. (*See* Opp. at 16–22; *see also id.* at 7.) A district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010). "'[I]n the usual case in which all federal law claims are eliminated before trial, the balance of factors to

be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Sanford*, 625 F.3d at 561 (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S, 343, 350 n.7 (1988)).

Having now dismissed the sole federal claim alleged against County Defendants, the Court declines to assert supplemental jurisdiction over plaintiffs' remaining claims at this juncture and **DISMISSES** those claims under Rule 12(b)(1). The Court defers ruling on them unless and until a federal claim is properly alleged. The Court therefore does not address the parties' arguments regarding plaintiffs' state-law claims at this juncture.

**VI. CONCLUSION**

For the foregoing reasons, County Defendants' motion to dismiss pursuant to Rule 12(b)(6) is **GRANTED** as to plaintiffs' Section 1983 claims. The Court declines to assert supplemental jurisdiction over the remaining state-law claims and **DISMISSES** the same under Rule 12(b)(1). Although the Court harbors doubts that plaintiffs can cure the deficiencies outlined above given the nature of their allegations, in an abundance of caution, and because the Court has not provided plaintiffs with a prior opportunity to amend, plaintiffs are given **LEAVE TO AMEND**.

Plaintiffs may file an amended complaint by no later than **Monday, May 6, 2019**. Any response thereto shall be filed **fourteen (14) days** thereafter. If an amended complaint is not filed, the case will be dismissed and the file closed.

This Order terminates Docket Number 20.

**IT IS SO ORDERED.**

Dated: April 12, 2019

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**