# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **E&B NATURAL RESOURCES MANAGEMENT CORPORATION, ET AL.,** <br> Plaintiffs, <br> vs. <br> **COUNTY OF ALAMEDA, ET AL.,** <br> Defendants. | CASE NO. 18-cv-05857-YGR <br><br> **ORDER DENYING MOTION TO INTERVENE** <br> Re: Dkt. No. 41 |

Plaintiffs E&B Natural Resources Management Corporation ("E&B"); Laurie Volm; Sharyl G. Bloom and Richard S. Bloom, co-trustees of The Lynn Bloom Trust; James C. Roth; Dolores D. Michaelson; and Michael Karpé initiated this action against defendants County of Alameda and Alameda County Board of Supervisors (the "Board") (collectively, the "County") seeking to overturn the Board's July 24, 2018 decision not to renew two conditional use permits ("CUPs") which defendants maintain are predicates to E&B's continued operation of an oil extraction and production facility on two parcels of land in Livermore, California.

Proposed defendant-intervenor, Center for Biological Diversity ("Center"), seeks to intervene as a matter of right and permissively under Federal Rule of Civil Procedure 24. The Center argues it is entitled to intervene because it spearheaded the administrative appeal overturning the conditional approval of the CUPs, and the disposition of this lawsuit threatens those efforts. In addition, the Center seeks to intervene to protect its interests in environmental

conservation and the welfare of nearby communities.[1]

Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court hereby **DENIES** the motion to intervene.

## I. BACKGROUND

The following background is taken from the First Amended Complaint ("FAC"):

Since 1966, E&B and its predecessors have possessed a series of CUPs permitting E&B to operate an oil extraction and production facility on two parcels of land in Livermore, California. In May of 2018, the Alameda County Planning Commission, East County Board of Zoning Adjustments conditionally approved E&B's permit renewal applications. The Center, an Alameda County-based public interest group focused on environmental protection and combating climate change, along with the Livermore EcoWatchdogs, appealed the conditional approval to the Board. On September 11, 2018, the Board granted the Center's appeal and denied the CUPs renewals, citing lack of public need, land use conflicts, and environmental concerns.

Plaintiffs bring this action seeking to overturn the Board's decision to deny the two CUPs for oil and gas extraction in Alameda County on the grounds that the Board's decision was "arbitrary and capricious," and that the Board acted "in excess of its jurisdiction" by divesting E&B of its vested rights to use the parcels. Plaintiffs assert that the decision violated plaintiffs' due process rights and the Board's own procedural standards because the Board denied the CUPs due solely to political pressure and not legitimate regulatory concerns.

## II. LEGAL STANDARD

Intervention is a procedure by which a nonparty can gain party status without the consent of the original parties. *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 933 (2009) ("intervention is the requisite method for a nonparty to become a party to a lawsuit"). Rule 24 contemplates two types of intervention: intervention of right and permissive intervention. Intervention exists as a matter of right when a federal statute confers the right to intervene or the applicant has a legally protected interest that may be impaired by disposition of the pending action

---

[1] Plaintiffs filed an opposition to the Center's motion on August 27, 2019. (Dkt. No. 44.) The same day, defendants filed a statement of non-opposition. (Dkt. No. 43.)

and that interest is not adequately represented by existing parties. Fed. R. Civ. P. 24(a). Permissive intervention may be allowed at a court's discretion when a federal statute confers a conditional right to intervene, or the applicant's claim or defense and the main action share a common question of law or fact. Fed. R. Civ. P. 24(b).

### III. ANALYSIS

#### A. Intervention as of Right – Rule 24(a)

Courts in the Ninth Circuit apply a four-part test to determine whether intervention should be granted as a matter of right, namely the applicant must (1) assert a "significantly protectable" interest relating to the property or transaction that is the subject of the action; (2) show that disposition of the action without intervention may as a practical matter impair or impede its ability to protect that interest; (3) be inadequately represented by the parties to the action; and (4) file a timely application. *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998); *Cabazon Band of Mission Indians v. Wilson*, 124 F.3d 1050, 1061 (9th Cir. 1997). The applicant bears the burden of establishing all four elements, and the rule is construed "broadly in favor of intervention." *Donnelly*, 159 F.3d at 409. Failure to satisfy any one of the requirements is fatal to the application, and a court need not reach the remaining elements if one of the elements is not satisfied. *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

The Court addresses each element in turn.

##### 1. *Significantly Protectable Interest*

To determine if an applicant has a "significantly protectable" interest relating to the property or transaction that is the subject of the action, the Court must consider whether: (1) the asserted interest is protectable under some law, and (2) a relationship exists between the legally protected interest and the claims at issue. *Wilderness Soc. v. U.S. Forest Service*, 630 F.3d 1173, 1179 (9th Cir. 2011). A would-be intervenor has a sufficient interest for intervention purposes if it demonstrates that "it will suffer a practical impairment of its interests as a result of the pending litigation." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006). "Although the intervenor cannot rely on an interest that is wholly remote and speculative, the intervention may be based on an interest that is contingent upon the outcome of the litigation."

3

*City of Emeryville v. Robinson*, 621 F.3d 1251, 1259 (9th Cir. 2010) (quoting *United States v. Union Elec. Co.*, 64 F.3d 1152, 1162 (8th Cir. 1995)). In the environmental law context, there are two factors that weigh in favor of finding that a "significantly protectable" interest exists: the group has an interest in seeing a wilderness area preserved for the use and enjoyment of its members, or actively participates in the administrative process leading to the litigation. *See e.g. Wilderness Soc.*, 630 F.3d at 1180; *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897-98 (9th Cir. 2011); *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 526-28 (9th Cir. 1983).

At oral argument, plaintiffs conceded that the Center has a significantly protectable interest in the outcome of this action. The Court agrees. The Center is an Alameda County-based public interest group focused on protecting the environment and combating climate change. It spearheaded the administrative appeal that lead to the Board's denials of the CUPs, which ultimately led to this litigation, and it asserts an interest in seeing the Board's decision—to which it purportedly dedicated significant organizational resources—upheld. In addition, the Center claims an interest in advancing its organizational mission of protecting the environment and combating climate change. Further, the Center purports to have an interest in mitigating potential adverse effects on its local members caused by continued oil extraction and production in Alameda County. Should plaintiffs succeed in their suit against defendants, the Center's asserted interests would "suffer a practical impairment." *See Lockyer*, 450 F.3d at 441. Such factors demonstrate the Center's "significantly protectable" interests in the subject of this action. *See Wilderness Soc.*, 630 F.3d at 1180; *Citizens for Balanced Use*, 647 F.3d at 897-98; *Sagebrush Rebellion*, 713 F.2d at 526-28.

    2.  *Effect on Proposed Intervenor's Ability to Protect Its Interests*

In terms of whether disposition of the action without intervention would impair or impede the intervenor's ability to protect its interests, courts consider if "an absentee would be substantially affected in a practical sense by the determination made in an action." *Southwest Ctr. for Biological Diversity*, 268 F.3d 810, 822 (9th Cir. 2001) (quoting Fed. R. Civ. P. 24 advisory

4

committee's notes).[2]

Having found that the Center has a significantly protectable interest in this action, the Court likewise finds that the disposition of this case may, as a practical matter, affect it. Should plaintiffs prevail in this lawsuit such that the Board's denial of the permits be overturned, plaintiffs will be free to proceed with oil and gas extraction and production on the land at issue, which would affect the Center's interests. Further, the Center does not appear to have another means to protect its purported interests. *See Lockyer*; 450 F.3d at 443 (finding proposed intervenor's interests would be impaired or impeded by disposition of the action where law at issue "[wa]s a spending measure and thus g[ave] the proposed intervenors no enforceable rights"); *see also Citizens for Balanced Use*, 647 F.3d at 898 (finding practical impairment where an adverse decision in underlying case would invalidate restrictions on motorized vehicle use in wilderness area which applicant fought to uphold).

The second factor for intervention weighs in favor of granting the motion.[3]

### 3. *Adequacy of Representation*

Next, the Court evaluates whether the present parties adequately represent a proposed intervenor's interests by considering whether: (1) the interest of the present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) the present party is capable and willing to make such arguments; and (3) a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect. *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (citing *California v. Tahoe Reg'l Planning Agency*, 792 F.2d 775, 778 (9th

---

[2] Plaintiffs do not explicitly address this element in their opposition.

[3] Although the first and second elements are separate, courts have recognized that one seldom comes without the other. *See, e.g., Natural Res. Def. Council v. U.S. Nuclear Regulatory Comm'n*, 528 F.2d 1341, 1345 (10th Cir. 1978) (finding that "the question of impairment is not separate from the question of existence of an interest"); *Jackson v. Abercrombie*, 282 F.R.D. 507, 517 (D. Haw. 2012) ("Generally after determining that the applicant has a protectable interest, courts have 'little difficulty concluding' that the disposition of the case may affect such interest.'") (citing *Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006)); *but see United States v. City of Los Angeles*, 288 F.3d 391, 402 (9th Cir. 2002) (finding that proposed intervenors, comprised of community groups and individuals, demonstrated a protectable interest in being free from unconstitutional police conduct but failed to demonstrate that their interest would be impaired where litigation would not prevent individuals from initiating suit against officers engaged in unconstitutional practices, nor would it prevent groups from pursuing police reform).

Cir. 1986)). "The 'most important factor' to determine whether a proposed intervenor is adequately represented by a present to the action is 'how the [intervenor's] interest compares with the interests of existing parties.'" *Perry*, 587 F.3d at 950-51 (quoting *Arakaki*, 324 F.3d at 1086). In general, the burden on the proposed intervenor is minimal: it only needs to show that its interest may be inadequately represented by the present parties. *Arakaki*, 324 F.3d at 1086 (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)).

Where the party and the proposed intervenor share the same "ultimate objective," however, a presumption of adequacy applies, and only a compelling showing to the contrary will rebut that presumption. *Perry*, 587 F.3d at 951 (quoting *Arakaki*, 324 F.3d at 1086); *see also Gonzalez v. Arizona*, 485 F.3d 1041, 1052 (9th Cir. 2007) (affirming denial of citizen group's motion to intervene where there was no indication that the state was unwilling or unable to defend the challenged proposition). Notably, the presumption also applies where, as here, the government is acting on behalf of a constituency that it represents. *Arakaki*, 324 F.3d at 1086 (citing *United States v. City of Los Angeles*, 288 F.3d 391, 401 (9th Cir. 2002)).[4]

The Center asserts three counter arguments to plaintiffs' claim that the Center shares the same ultimate objective as the County in upholding the Board's decision. First, the Center argues that it represents a different constituency. Specifically, the Center asserts that it represents members residing both inside and outside of Alameda County who are focused on environmental issues and public health. Second, the Center argues that the County is "charged with responding to all manner of general welfare and needs" of its constituents, and thus, may prioritize other

---

[4] The Center mischaracterizes the holding of *Arakaki*, arguing that the presumption of adequacy applies *only* "where the applicant and the government were constitutionally bound to 'share the same interest.'" (Dkt. No. 45 at 10, quoting *Arakaki*, 324 F.3d at 1086.) *Arakaki* does not propose such a bright-line rule. *See Arakaki*, 324 F.3d 1078, 1087 (applying presumption of adequacy where government defendant was directed by state constitution and statute to protect proposed intervenor's interests). Rather, *Arakaki* represented one—but not the only—circumstance in which the presumption applies. *See League of Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1305 (9th Cir. 1997) (finding presumption of adequacy applied where defendants—state governor and attorney general—had strongly supported challenged proposition which proposed-intervenor sought to defend); *Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 838 (holding that the presumption of adequacy applied where would-be intervenor and the government sought the same limited interpretation of statute); *Perry*, 587 F.3d at 951-52 (finding proposed-intervenor could not overcome presumption of adequacy where defendant shared the same ultimate objective of upholding the constitutionality of Proposition 8).

6

interests over environmental interests, as it has done in granting past CUPs renewals.[5] Third, the Center contends that the County has demonstrated its unwillingness to represent the Center's interests by failing to file a motion to dismiss in response to the first amended complaint and failing to raise certain affirmative defenses. Relatedly, for the first time at oral argument, the Center indicated that if granted intervenor status, it would file a cross-motion for summary judgment on the issue of vested rights. That the County does not plan to do the same, the Center contended, exemplifies the County's inadequacy.[6]

The Center's arguments regarding inadequacy fail to persuade. As an initial matter, because the County is a government acting on behalf of its constituency, a presumption of adequacy applies. As noted, the County and the Center have the same goal of defending the Board's decision to deny E&B's permits. Insofar as the interests arguably diverge, such differences focus on litigation strategy rather than fundamentally differing points of view on the litigation as a whole. *Compare Perry*, 587 F.3d at 954 (holding that "differences in litigation strategy" such as a proposed intervenor's unwillingness to stipulate to three facts which the current party would have conceded does not justify intervention as a matter of right); *with Citizens for Balanced Use*, 647 F.3d at 899-900 (finding applicant-intervenor had made compelling showing of inadequacy where, among other things, there were "fundamentally differing points of view

---

[5] More specifically, the Center suggests the County may be inclined to settle to avoid potential financial liability from an adverse decision. A proposed intervenor's unique "economic interests" may support a finding of inadequate representation. *See e.g. Sagebrush Rebellion*, 713 F.2d at 529; *Sierra Club v. United States E.P.A.*, No. 13-cv-02809-YGR, 2013 WL 5568253, at *3 (N.D. Cal. Oct. 9, 2013). For the "economic interests" factor to apply, however, a proposed intervenor's economic interests must be "concrete" and "related to the underlying subject matter of an action." *Sierra Club*, 2013 WL 55668253, at *3. Economic interests that are purely "speculative" or "several degrees removed" from the subject matter of an action do not support intervention. *Id.* (citing *United States v. Alisal Water Corp.*, 370 F.3d 915, 920 (9th Cir. 2004)). Here, there is no indication that the Center has any concrete economic interest in the land at issue.

[6] The Center also argues that the County's limited resources will limit its ability to defend its administrative decision below effectively. However, "[v]irtually all governments face budget constraints generally, and if such a basis were sufficient to establish inadequate representation, it would eliminate the presumption of adequate representation when the government and the intervenor-applicant share the same interest." *Prete v. Bradbury*, 438 F.3d 949, 957 (9th Cir. 2006).

between applicants and the Forest Service on the litigation as a whole").[7] For example, that the County does not intend to file a cross-motion on the vested rights issue does not change the fact that both parties seek the same outcome in the litigation.

Likewise, the Center's arguments that focus on the County's past conduct do not compel a different result. Prior to the appeal that led to this lawsuit, the Center had never challenged the County's renewal of the CUPs. The Center has not shown how the County's conduct in other cases is relevant to an analysis here. There is no present indication that the County would not vociferously defend its decision to deny E&B's permit application. *Cf. Citizens for Balanced Use*, 647 F.3d at 899 (finding applicant-intervenor had made compelling showing of inadequacy where government defendant had only "reluctantly" adopted the restrictions favorable to applicant's interests after applicant brought an action to compel them to do so, *and* the defendant sought to overturn the district court decision which had forced it to adopt the restrictions the intervenor brought suit to enforce); *Sagebrush Rebellion*, 713 F.2d at 528 (granting intervention as of right where proposed intervenor had unique expertise, *and* defendant, Secretary of the Interior, previously headed the organization representing the plaintiffs in the underlying action); *Idaho Farm Bureau Federation v. Babbitt*, 58 F.3d 1392, 1398 (9th Cir. 1995) (affirming grant of intervention as of right where defendant, U.S. Fish and Wildlife Service, was unlikely to defend its own decision or argue on behalf of proposed intervenors because defendant had only issued challenged administrative finding to satisfy settlement agreement with proposed intervenors). Any arguments that the County might be unwilling or unable to serve as an adequate representative are entirely speculative. *See League of Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1307 (9th Cir. 1997) (finding that proposed intervenors could not establish inadequate representation based on "speculation" that successors to the current government administrators

---

[7] Although the Center's proposed answer asserts three affirmative defenses not raised in the County's answer (unclean hands, nuisance, necessity), this does not persuade the Court that the Center and the County do not share the same "ultimate objective." Moreover, the County raises twenty-two affirmative defenses in its answer, while the Center's proposed answer only raises ten. (*Compare* Dkt. No. 32 *and* Dkt. No. 41-5.) This further supports a finding that the County is an adequate representative.

8

would not pursue the cause with equal fervor).[8]

In sum, although the Center may have an environmental focus not shared by the County and may disagree with the County's litigation approach, the Center has not demonstrated that the County has a "fundamentally differing" point of view "on the litigation as a whole." *Citizens for Balanced Use*, 647 F.3d at 899 (citing *Lockyer*, 450 F.3d at 444-45). Accordingly, the Center has not shown that the Center is not an adequate representative.[9] Failure to satisfy any of the four elements of intervention as of right is fatal to an application to intervene.

### 4. Timeliness

As this factor also relates to permissive intervention, the Court nevertheless addresses the timeliness of the Center's motion. To determine whether a motion for intervention is timely, Ninth Circuit courts consider three factors: (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to the other parties; and (3) the reason for and length of the delay. *League of Latin Am. Citizens*, 131 F.3d at 1302 (quoting *County of Orange v. Air California*, 799 F.2d 535, 537 (9th Cir. 1986)). The question is not whether intervention itself will cause the "nature, duration, or disposition of the lawsuit to change," but rather, whether the existing parties will be prejudiced by the delay caused by intervention. *Defs. of Wildlife*, 2005 WL 3260986, at *4. Important factors in determining potential prejudice are the loss of evidence, settlements made in expectation that no further claims will be brought, and the need to reopen matters previously resolved. *Id*.

---

[8] *County of Fresno v. Andrus*, 622 F.2d 436 (9th Cir. 1980), on which E&B relies, is inapposite. There, the defendant Secretary of the Interior had already opted not to pursue an appeal of the temporary restraining order issued by the court while the proposed intervenor clearly would have. Thus, the court was not required to speculate about potential diverging interests. The defendant had already demonstrated its unwillingness to protect the applicant's interests.

[9] E&B's reliance on *Defs. of Wildlife v. Johanns*, No. 04-cv-4512-PJH, 2005 WL 3260986, at *7-8 (N.D. Cal. Dec. 1, 2005) is misplaced. In that case, no presumption of adequacy applied because the *state* sought to intervene on the side of an environmental group. The court explained that intervention was appropriate because the state represented a broader constituency than the present parties *and* had several significant interests not shared by the present parties, namely, the state's (1) proprietary interest in protecting natural resources; (2) ownership interest in tracts of land adjacent to the national forests at issue; (3) procedural interest in the federal government's compliance with federal environmental laws; and (4) state's injuries from the federal government's non-compliance with those laws.

Here, although the Center filed its motion more than ten months after plaintiffs filed the initial complaint, its delay would not prejudice the existing parties. The only substantive issue the Court has addressed in this case relates to plaintiffs' *Monell* claims, which were raised in the initial complaint, dismissed with leave to amend, and which plaintiffs re-assert in the FAC. Discovery is still open, and neither party has filed a summary judgment motion. Thus, the Center seeks to intervene at a relatively early stage in this litigation. *Compare Defs. of Wildlife*, 2005 WL 3260986, at *3 (finding proceedings were still at an early stage after motion to dismiss granted and amended complaint filed); *with League of Latin Am. Citizens*, 131 F.3d at 1303 (finding motion to intervene untimely where district court had issued a temporary restraining order and a preliminary injunction, certified a class, ruled on a motion to dismiss and a motion for summary judgment, and the parties had engaged in nine months of discovery). Further, the Center represents that it will not revisit any resolved issues, and its proposed cross-motion on the vested rights issue would not derail the established schedule. Because the Center's intervention at this stage does not risk prejudicing the existing parties, its motion is timely.

### B. Permissive Intervention – Rule 24(b).

The Court next addresses permissive intervention under Rule 24(b). An applicant for permissive intervention must show that (1) independent grounds for jurisdiction exist; (2) the applicant's claim or defense shares a common question of law or fact with the main action; and (3) the motion is timely. *League of Latin Am. Citizens*, 131 F.3d at 1308; Fed. R. Civ. P. 24(b). Once established, and even when the prerequisites are met, a district court has considerable discretion in ruling on the motion for permissive intervention. *In re Benny*, 791 F.2d 712, 721-22 (9th Cir. 1986). "In exercising its discretion, the court shall consider whether intervention will unduly delay or prejudice the rights of the original parties." Fed. R. Civ. P. 24(b).

#### 1. *Independent Jurisdictional Grounds*

Permissive intervention first requires independent grounds for jurisdiction. *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011)(citing *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992)). Permissive intervention's jurisdictional requirement is primarily concerned with avoiding the inappropriate expansion of the district

10

courts' jurisdiction. *Id*. For instance, in a diversity case, a proposed intervenor may not use permissive intervention "to gain a federal forum for state-law claims over which the district court would not, otherwise, have jurisdiction." *Id*. However, in federal question cases, like the instant action, "the district court's jurisdiction is grounded in the federal question(s) raised by the plaintiff," and the requirement does not apply when the proposed intervenor is not raising new claims. *Id*. at 844.

Here, the Court has federal question jurisdiction over plaintiffs' federal claims and supplemental jurisdiction over the remaining claims. The Center has represented that it does not intend to raise new claims over which the Court would not otherwise have jurisdiction. Accordingly, the jurisdictional requirement, to the extent it applies, is satisfied.

### 2. *Common Question of Law or Fact*

Permissive intervention "requires only that [the proposed intervenor's] claim or defense and the main action have a question of law or fact in common." *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108 (9th Cir. 2002), *abrogated on other grounds by Wilderness Soc.*, 630 F.3d 1173.

Seven of the ten affirmative defenses raised by the Center in its proposed answer were also raised by the County in its answer. (Dkt. Nos. 32, 41-5.) The other three (unclean hands, nuisance, necessity) are interconnected with the fundamental issues in this litigation. Further, the Center's proposed cross-motion for summary judgment on the vested rights issue would address an issue related plaintiffs' claims against the County. Thus, the Center's asserted defenses share common questions of law with the main action.

### 3. *Timeliness*

The Center's motion must also be timely. Fed. R. Civ. P. 24(b). In determining timeliness, courts consider three factors: (1) the stage of the proceedings; (2) any prejudice to existing parties; and (3) the length of, and reason for, any delay. *League of Latin Am. Citizens*, 131 F.3d at 1308 (citing *Orange Cty. v. Air California*, 799 F.2d 535, 539 (9th Cir. 1986)).

Here, as discussed above, timeliness is not an issue. The Center brought its motion relatively early in the proceedings and has represented that it will not reopen the pleadings or

11

disturb the schedule set by this Court. Existing parties will not be prejudiced by intervention at this stage when few substantive issues have been addressed. Thus, the motion is timely.

### 4. *Exercise of Discretion*

The Court maintains discretion to grant or deny the motion to intervene and thereby may "consider other factors . . . including 'the nature and extent of the intervenor['s] interest' and 'whether the intervenor['s] interests are adequately represented by other parties.'" *Perry*, 587 F.3d at 955 (citing *Spangler v. Pasadena City Bd. Of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977)). A court may deny permissive intervention when it "would be redundant and would impair the efficiency of litigation." *Tahoe Reg'l Planning Agency*, 792 F.2d at 779.

While "specialized knowledge" may support permissive intervention, insofar as the Center may have such knowledge based on its work on environmental issues and the appeal at issue here, there is no reason that discovery or the use of experts could not resolve any information gap between the Center and the County. *See Prete*, 438 F.3d at 958.[10] What is more, the Court is unconvinced that any specialized knowledge the Center might offer would offset the burdens of duplicative briefing and discovery complications which would result from granting the Center full party status. *See Drakes Bay Oyster Co. v Salazar*, No. 12-cv-06134-YGR, 2013 WL 451813, at *9 (N.D. Cal. Feb. 4, 2013, *aff'd sub nom. Drakes Bay Oyster Co. v. Envtl. Action Comm. of W. Marin*, 571 F. App'x 605 (9th Cir. 2014) ("[W]hile Proposed Intervenors may have a unique point of view and expertise, intervention as a party will not necessarily facilitate resolution on the merits, but it is likely to result in duplicative briefing adding a layer of unwarranted procedural complexity.")

In light of the aligned interests and the potential for duplication, the Court finds that the benefits of proposed intervention are outweighed by the efficient resolution of the pending dispute. Moreover, the Court can and may permit briefing by the Center on discrete issues of concern where its unique perspective would contribute productively to the discussion.

---

[10] Moreover, the County's familiarity with the permit renewal process (including environmental considerations) and its historical relationship with E&B and its predecessors suggests that the County has sufficient background knowledge and access to information with which to defend itself.

12

Accordingly, the Center's request for permissive intervention is denied.

## IV. CONCLUSION

For the foregoing reasons, the Court hereby **DENIES** the motion to intervene.

This Order terminates Docket Number 41.

**IT IS SO ORDERED.**

Dated: November 4, 2019

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**