**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

<table>
<tr><td>

**E&B Natural Resources Management Corporation, et al.,**

      Plaintiffs and Petitioners,

vs.

**County of Alameda, et al.,**

      Defendants and Respondents.

</td><td>

Case No.  18-cv-05857-YGR

**Order Denying Motion For Partial Summary Judgment**

Re: Dkt. Nos. 59, 66

</td></tr>
</table>

Plaintiffs and petitioners E&B Natural Resources Management Corporation ("E&B"); Laurie Volm; Sharyl G. Bloom and Richard S. Bloom, co-trustees of The Lynn Bloom Trust; James C. Roth; Dolores D. Michaelson; and Michael Karpé initiated this action against defendants and respondents County of Alameda (the "County") and Alameda County Board of Supervisors (the "Board") seeking to overturn the Board's July 24, 2018 decision not to renew two conditional use permits ("CUPs") which are predicates to E&B's continued operation of an oil extraction and production facility on two parcels of land in Livermore, California.

Now before the Court is plaintiffs' motion for partial summary judgment pursuant to Federal Rule of Civil Procedural 56 and Local Rule 7-2 related to the fourth cause of action for declaratory relief.   Specifically, plaintiffs move for summary judgment on whether they have a fundamental vested right in oil production operations at the Livermore Oil Field and whether defendants are estopped to extinguish plaintiffs' rights through the CUP renewal process. Plaintiffs also seek a finding that the Court will exercise independent judgment in reviewing plaintiffs' fifth cause of action for a writ of administrative mandamus.

The motion came on for hearing on January 7, 2020.  Having carefully considered the papers submitted, the arguments of the parties at the hearing, the admissible evidence, and the pleadings in this action, and for the reasons set forth below, plaintiffs' motion is hereby **Denied**.[1]

---

[1] The Center for Biological Diversity, the appellant in the underlying administrative

United States District Court
Northern District of California

I.   **BACKGROUND**[2]

E&B is an independent oil and gas company headquartered in Bakersfield, California that conducts oil and gas operations at the Livermore Oil Field in Alameda County.  The Livermore Oil Field consists of three parcels within a state-recognized field with boundaries established by the California Department of Conservation, Division of Oil Gas & Geothermal Resources: (1) the Greenville Investment Group ("GIG") parcel, (2) the Nissen parcel, and (3) the Schenone parcel.  The parcels are zoned as "Large Parcel Agriculture," and oil operations are allowed only by permit.

The GIG parcel is 55.8 acres, primarily consisting of agricultural land.  The GIG parcel also has an oil production site consisting of two oil production wells that occupy a 100-foot by 200-foot fenced-in area on the land.  Oil production is conveyed by pipeline to the adjacent Nissen parcel.  The Nissen parcel is 143.75 acres of flat grassland with fenced-in oil production facilities consisting of five wells and storage and production equipment.  The Schenone parcel also has a production area with two fenced-in production wells and a pipeline that conveys the production to the Nissen parcel.  The Schenone parcel's permit is not at issue in this litigation.

In 1965, E&B's predecessor, McCulloch Oil Corporation ("McCulloch Oil"), entered into

_____

process, filed a motion for leave to file an *amicus curiae* brief in support of defendants' opposition.  (Dkt. No. 66.)  "The district court has broad discretion to appoint amici curiae." *Hoptowit v. Ray*, 682 F.2d 1237, 1260 (9th Cir. 1982), abrogated on other grounds by *Sandin v. Conner*, 515 U.S. 472 (1995).  Here, in light of the Center for Biological Diversity's historical involvement in this case, the motion for leave to file the *amicus curiae* brief is **GRANTED**, although the Court notes the brief is of limited value as to this motion.

[2]  The facts cited herein are undisputed and derive from the parties' separate statements of undisputed material facts, exhibits 59 and 60 of plaintiffs' request for judicial notice, and the hearing on the motion.  (Dkt. Nos. 59-6, 64.)  With respect to judicial notice, both parties request that the Court take notice of legislative enactments and official governmental documents and records.  (Dkt. Nos. 59-6, 63.)  Such documents are "not subject to reasonable dispute" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b); *see also Citizens for Free Speech, LLC v. County of Alameda*, 62 F.Supp.3d 1129, 1136 (N.D. Cal. 2014) (taking notice of County zoning ordinance); *Gardner v. Am. Home Mortg. Servicing, Inc.*, 691 F.Supp.2d 1192, 1196 (E.D. Cal. 2010) ("The documents submitted by Defendants are public[ly] recorded documents of which judicial notice may properly be taken, and accordingly, those documents may be considered in deciding Defendants' dismissal motion.").  As such, the parties' requests for judicial notice is **GRANTED**.

leases with property owners to develop oil production on the GIG and Nissen parcels.  In December 1966, the County granted McCulloch Oil a one-year permit to drill an exploratory well on the GIG parcel.

A few days later, the County adopted an interim ordinance permitting oil extractions on certain land, including on the parcels at issue here, subject to issuance of a "use permit."  On March 9, 1967, the County adopted a permanent ordinance to the same effect.  Then, on June 13, 1967, the County adopted the "Regulation of Exploratory and Production Oil Wells in Alameda County," which formalized the conditions to be included in use permits issued for oil and gas exploration and production.  The regulation set expiration dates of two years for exploratory well permits and 20 years for production well permits.  Thereafter, the County approved McCullough Oil's applications for CUPs for exploratory wells and production facilities on the GIG and Nissen parcels.  Upon expiration of the use permits in 1987, McCullough Oil applied and obtained approval from the County for CUPs to allow continued oil production operations on the parcels for a renewed 20-year term.

Between 2006 and 2009, E&B purchased the rights to operate and produce oil from the Livermore Oil Field for $2.5 million.  When the use permits expired in 2007, the County approved McCullough Oil's applications for CUPs to continue oil operations at Livermore Oil Field for an additional 10-year term.  Along with its purchase of the rights to Livermore Oil Field, E&B understood that it was acquiring use permits that were subject to renewal.

From 2015 to 2018, E&B invested approximately $1 million at the Livermore Oil Field, installing fencing to enclose the operational areas, replacing aging storage tanks, rebuilding the secondary containment, replacing the flow lines, painting the pump jacks, and investing in new tanks with modern leak detection equipment.  E&B also purchased fee title (surface and mineral rights) to the Nissen parcel for $1.4 million.  More recently, in 2019, E&B acquired a small surface parcel within the Nissen parcel from the U.S. government for $30,000.

In 2017, E&B submitted applications to renew the use permits for operations on the GIG and Nissen parcels.  The County's Board of Zoning Adjustments ("BZA") held an initial public hearing on February 22, 2018 to consider jointly the two CUP renewal applications for the

United States District Court
Northern District of California

1    Livermore Oil Field.  The BZA heard public comment and continued consideration of the CUP

2    applications in order for staff to obtain information from the Environmental Health Department.

3    The County held a second public hearing on May 24, 2018.  After again hearing public comment,

4    the BZA recommended conditional approval of the CUPs.

5        On June 1, 2018, the Center for Biological Diversity ("CBD") appealed the BZA's

6    conditional approval of the CUPs to the County's Board, arguing in part that E&B's operations

7    raised a threat of groundwater contamination.  The Board heard CBD's appeal on July 24, 2018,

8    and subsequently voted to grant CBD's appeal, thereby denying E&B's CUP renewal

9    applications.[3]

10   **II.   LEGAL STANDARD**

11       Summary judgment is appropriate when "there is no genuine dispute as to any material fact

12   and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary

13   judgment is mandated "against a party who fails to make a showing sufficient to establish the

14   existence of an element essential to that party's case, and on which that party will bear the burden

15   of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A moving party bears the

16   burden of specifying the basis for the motion and the elements of the causes of action upon which

17   the plaintiff will be unable to establish a genuine issue of material fact.  *Id.* at 323.  The burden

18   then shifts to the non-moving party to establish the existence of a material fact that may affect the

19   outcome of the case under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477

20   U.S. 242, 248 (1986).

21   **III.   DISCUSSION**

22       The Court begins by considering whether plaintiffs possess a fundamental vested right to

23   continue operations at the Livermore Oil Field.

24       "The grant or denial of a conditional use permit is an administrative or quasi-judicial act.

25   Judicial review must be in accordance with [California] Code of Civil Procedure section 1094.5."

26

27       [3]  Concurrent with the appeal proceedings before the Board, E&B raised the issue of its
28   vested rights on July 5, 2018.  (Dkt. No. 59-2, ¶ 14.)  The County did not address plaintiff's vested
     rights in either its hearing or decision to deny the CUPs.  (*Id.*)

United States District Court
Northern District of California

1  *Goat Hill Tavern v. City of Costa Mesa,* 6 Cal.App.4th 1519, 1525, 8 Cal.Rptr.2d 385 (1992)

2  (internal citations omitted).  "If [an administrative] decision does not substantially affect a

3  fundamental vested right, the trial court considers only whether the findings are supported by

4  substantial evidence in light of the whole record." *Id.* at 1525-1526.  If, however, "an

5  administrative decision substantially affects a fundamental vested right, the trial court must

6  exercise its independent judgment on the evidence and find an abuse of discretion if the findings

7  are not supported by the weight of the evidence." *Id.* at 1525.

8       Whether an administrative decision substantially affects a fundamental vested right "must

9  be decided on a case-by-case basis." *301 Ocean Ave. Corp. v. Santa Monica Rent Control Bd.,*

10  228 Cal.App.3d 1548, 1556, 279 Cal.Rptr. 636 (1991).  Thus, "no exact formula exists by which

11  to make this determination," but "courts are less sensitive to the preservation of purely economic

12  interests." *Id*.  Further, an entity acquires vested rights to continue its existing land use if it

13  performs substantial work and incurs substantial liabilities in good-faith reliance upon a permit

14  issued by a government agency.  *Avco Cmty. Developers, Inc. v. S. Coast Reg'l Comm'n*, 17

15  Cal.3d 785, 791 (1976).  "The ultimate question in each case is whether the affected right is

16  deemed to be of sufficient significance to preclude its extinction or abridgment by a body lacking

17  *judicial* power." *Whaler's Vill. Club v. California Coastal Com.*, 173 Cal.App.3d 240, 252, 220

18  Cal.Rptr. 2 (1985) (citation omitted, emphasis in original).

19       Each party cites to cases that support their positions in certain respects, but all are

20  distinguishable from this case.  Plaintiffs, for their part, contend that they have a fundamental

21  vested right in continuing operations at Livermore Oil Field because the County has approved

22  such operations since 1966, and E&B and its predecessors relied on those approvals to make

23  significant investments in the land.  In support of this claim, plaintiffs primarily rely on *Goat Hill*

24  *Tavern*.  There, a local tavern operated for over 35 years as a legal nonconforming use, during

25  which time the owner invested more than $1.75 million on refurbishments.  *Goat Hill Tavern*, 6

26  Cal.App.4th at 1522-23.  In 1988, the owner expanded the tavern to add a game room.  *Id*. at 1523.

27  Four years after the fact, the owner applied for and obtained a six-month CUP for the expansion.

28  *Id*.  Another year passed when, following citizen complaints, the city discovered that the permit

5

United States District Court
Northern District of California

had expired.  *Id*.  The city approved two back-to-back requests for three-month renewals of the permit before denying the third request.  *Id*. at 1523.  On review, the court of appeal held that owner had a fundamental vested right in the tavern's continued operation, which would cease absent renewal of the permit.  *Id*. at 1529.[4]

 *Goat Hill Tavern*, however, was decided based on "the unique facts presented."  *Id*. at 1529.  This Court finds it distinguishable from the case at hand on at least three grounds.  First, *Goat Hill Tavern* involved a CUP for expansion of a legal nonconforming use that had existed for over 35 years.  This posture highlighted the "utter[] implaus[ibility] that [the tavern owner] knowingly gave up all rights to continue operating Goat Hill Tavern in exchange for the opportunity to keep his game room expansion open for six months."  *Id*. at 1529, n.4.  Said differently, "had Goat Hill Tavern never built its game room expansion, it would still be operating as a legal nonconforming use."  *Id*. at 1531, n.5.  Here, all of E&B's and its predecessors' oil and gas operations on Livermore Oil Field were performed pursuant to limited-term permits.  There was no other legal nonconforming use of the land.[5]

 Second, in *Goat Hill Tavern*, the court noted that the city had a "practice" of "do[ing] nothing about 'expired' conditional use permits and [] allow[ing] businesses to continue."  *Id*. at 1530.  Under those circumstances, businesses reasonably may have believed that permit renewal was not required or important and may have invested in their businesses, with or without a permit, accordingly.  Said differently, the city's past inaction rendered Goat Hill Tavern's reliance reasonable.  The same cannot be said here, where defendants' permit renewal process appears to have been enforced consistently.

 Third, a portion of the $1.75 million investment made by the tavern owner was made "at the city's behest."  *Id*. at 1529.  In contrast, there is no evidence that the County required or even

---

[4]  Although the CUP technically applied to the game room expansion only, the parties and the court operated under the premise that denying renewal of the permit would put the tavern out of business.  *Id*. at 1529, n.3.

[5]  In its reply, plaintiffs contend that they are not claiming a fundamental vested right based on a prior nonconforming use.

6

United States District Court
Northern District of California

1   suggested that E&B make investments in Livermore Oil Field.  Instead, plaintiffs' investments

2   appear to have been voluntary, and knowing, business decisions.

3      Defendants counter by citing to several cases that, while different in terms of scale, found

4   no fundamental vested right where business owners were granted limited CUPs.  For example, in

5   *Metropolitan Outdoor Advertising Corp. v. City of Santa Ana,* 23 Cal.App.4th 1401, 1403, 28

6   Cal.Rptr.2d 664 (1994), a billboard owner received a CUP allowing it to erect a billboard.  After

7   the city denied the owner's application for a subsequent CUP, the owner sued, claiming it

8   possessed a fundamental vested right in the continued use and maintenance of the billboard.  *Id*.

9   The court rejected the claim, emphasizing that the owner agreed to be bound by the permit's

10   terms.  *Id*. at 1404.  The court reasoned that, given those terms, the owner must have "balanced the

11   costs of erecting, maintaining and removing the billboard against the economic benefits derived

12   from the sign over the life of the conditional use permit."  *Id*. n.1.  Similarly, in *Am. Tower Corp.*

13   *v. City of San Diego*, 763 F.3d 1035, 1057 (9th Cir. 2014), the Ninth Circuit found that a plaintiff

14   did not have a fundamental vested right to continued use of three cell tower facilities.  The court

15   focused on the "plain language" of the original CUPs issued to the plaintiff, which "explicitly

16   required ceasing all activity at [plaintiff]'s facilities and returning the sites to their original

17   condition ten years after the permit was issued if new CUP applications were not timely submitted

18   and ultimately approved."  *Id*. at 1057-58.

19      Defendants also identify several cases in which courts found no fundamental vested right

20   where the loss of use of a particular asset was purely economic, rather than a loss which would

21   have resulted in the inability to continue operating a business.  In *Hardesty v. Sacramento Metro.*

22   *Air Quality Mgmt. Dist.*, 202 Cal.App.4th 404, 416, 136 Cal.Rptr.3d 132 (2011), the court found

23   that requiring a permit for mining operations in a designated area did not implicate a fundamental

24   vested right because there was "nothing in the administrative record to indicate that [plaintiff]

25   w[ould] be driven out of business by the requirement[.]"  Likewise, in *Standard Oil Co. v.*

26   *Feldstein*, 105 Cal.App.3d 590, 604 164 Cal. Rptr. 403 (1980), the court held a decision to require

27   Standard Oil Company to shut down certain refinery units did not affect a fundamental vested

28   right because there was "no contention that Standard [would] be driven to financial ruin," nor "a

1   contention that this particular facility [would] be forced to operate at a loss and close."  In *Mobil*

2   *Oil Corp. v. Superior Court*, 59 Cal.App.3d 293, 305, 130 Cal.Rptr. 814 (1976), the decision to

3   require two oil companies to install gasoline vapor recovery systems at their gas stations did not

4   affect a fundamental vested right where the court was "not presented with the enforcement of a

5   rule which effectively drives the Oil Companies out of business.  At most it puts an economic

6   burden on them increasing the cost of doing business."  *See also Am. Tower Corp.*, 763 F.3d at

7   1058 (three cell phone towers comprised a portion of plaintiff's telecommunications network, and

8   thus, the financial loss to plaintiff from denial of its permits were "purely economic interests that

9   d[id] not rise to the level of a fundamental vested right under California law"); *Metropolitan*

10  *Outdoor Advertising Corp.,* 23 Cal.App.4th at 1401 (permit denial required the owner to remove

11  only one of its many billboards, which would not significantly injure the owner's business).

12      It is within this framework of authorities that the Court considers the evidence proffered in

13  this case.  In doing so, the Court is mindful that a CUP does not bestow on the permit-holder a

14  fundamental vested right, but rather, the burden is on plaintiffs to establish such a right based on

15  specific facts.  Here, each CUP granted by the County since 1967 contained an explicit temporal

16  limit.  The 10- and 20-year terms were consistent with long-term use of the Livermore Oil Field

17  for oil and gas operations, but not necessarily permanent use.  Although the CUPs did not require

18  the termination of oil production or the removal of production facilities at the end of the permit

19  period, they did require the cessation of oil operations on designated land.  Plaintiffs cannot now

20  claim to be surprised that these permits, which were, by definition, limited in term, have now

21  expired.

22      Nor can plaintiffs claim that past permit renewals were equivalent to a guaranty that the

23  permits would be renewed in perpetuity.  "[A] conditional use permit . . . is, by definition,

24  discretionary."  *Smith v. Cty. of Los Angeles*, 211 Cal.App.3d 188, 197, 259 Cal.Rptr. 231 (1989).

25  Record evidence offered by both parties shows that the administrative process for renewing CUPs

26  was anything but pro forma.  Rather, the process involved, at a minimum, analysis and review by

27  the County's Planning Department, the County's Environmental Health Department, and the BZA,

28  as well as public hearings.  Many opinions and recommendations were offered during the process.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   If renewal of the CUPs was automatic, no need would exist for the County to enforce the permit

2   renewal process at all, let alone impose such a rigorous process.[6]  Moreover, it is notable that these

3   CUPs implicate sensitive and evolving issues related to the environment, public welfare, and

4   public need.  Under the circumstances, the Court is especially reluctant to tie the hands of the

5   municipal government by finding that plaintiffs possess a fundamental vested right based on past

6   acts and conditions.

7           In addition, defendants have not proffered sufficient evidence to persuade the Court that

8   denial of the CUP renewal in this case will result in anything more than a "purely economic loss."

9   Plaintiffs emphasize that as of November 2019, they had invested nearly $5 million in acquiring

10  and operating Livermore Oil Field, with an estimated profit of approximately $11 million still to

11  be recovered.  Plaintiffs have not, however, proffered any evidence that the County's prior denial

12  of the CUP renewal itself would have destroyed or even significantly impacted its overall

13  business.  Nor have plaintiffs demonstrated that $5 million in investments is significant in the

14  specific context of the capital-intensive oil and gas industry or relative to returns on investments

15  already earned during the permit period, especially in light of the knowledge of term limitations.

16  Without additional evidence regarding plaintiffs' purported losses, the Court finds plaintiffs have

17  failed in their burden to show harm to their economic interests sufficient to confer a fundamental

18  vested right.[7]

19

20          [6]  The Court notes that this case involves non-renewal of CUPs, not revocation of an active
21  permit, and thus can be distinguished from cases like *Malibu Mountains Recreation, Inc. v.
    County Of Los Angeles*, 67 Cal.App.4th 359 (1998) and *Trans-Oceanic Oil Corporation v. City Of
22  Santa Barbara,* 85 Cal.App.2d 776 (1948).

23          [7]  *The Termo Co. v. Luther*, 169 Cal.App.4th 394, 86 Cal.Rptr.3d 687 (2008), another case
24  on which plaintiffs rely, also fails to persuade.  In *Termo*, an owner and operator of 28
    unabandoned oil wells in Huntington Beach, California sought to set aside a state order directing
25  the plugging and abandonment of those wells.  169 Cal.App.4th at 398-99.  In holding that a
    fundamental vested right existed, the court emphasized that oil was "an extraordinarily valuable
26  resource, especially in the current economic era," and thus, the right to extract oil was
    "fundamental considering its potentially massive economic aspect and its considerable effect in
27  human terms."  *Id*. at 407-08.  Today, the economics of oil production are much different, and
    moreover, at issue are seven wells rather than 28.  As explained, plaintiffs have not proffered
28  evidence that denial of the permit renewal will have significant macro or microeconomic effects.

In sum, plaintiffs have not shown that they have a fundamental vested right in continued oil operations at Livermore Oil Field.  Moreover, because no fundamental vested right exists, the Court need not reach the other issues raised in plaintiffs' motion, namely, whether the County is estopped to deny plaintiffs' vested right to operate the Livermore Oil Field and whether the Court must apply an independent judgment standard when reviewing the County's denial of the CUPs renewal.  On the latter issue, absent a fundamental vested right, the substantial evidence test, rather than the independent judgment test, applies.[8]

**IV.    CONCLUSION**

For the foregoing reasons, plaintiffs' motion for partial summary judgment is **DENIED**. Further, a Case Management Conference shall be set for **Monday, July 20, 2020** at **2:00 p.m.** in the Federal Building, 1301 Clay Street, Oakland in Courtroom 1.  In light of the uncertainties with the ongoing coronavirus disease (COVID-19) pandemic, the parties are instructed to check the Court's scheduling notes to determine whether the conference will be held in person or by some alternate platform.

This Order terminates Docket Numbers 59 and 66.

**IT IS SO ORDERED.**

Dated: June 8, 2020

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

Moreover, *Termo* did not involve a CUP denial.

[8]  Plaintiffs have filed objections to portions of the administrative record prepared by the County, arguing that it is, at various points, disorganized, improperly catalogued, incomplete, and incorrect. (Dkt. No. 70.)  The issues identified by plaintiffs, however, do not impact the Court's decision on the instant motion.  As such, the Court defers any decision on whether defendants must revise the administrative record to a later date when any such revisions may be necessary.